George A. Budlong et al
vs.                          P.A.No.936
Ida M. Budlong, Admx.
June 5, 1926

BAKER, J. Heard jury trial waived.

This is a probate appeal from a decree of the Municipal Court of the City of Providence ordering distribution of the estate of one Joseph A. Budlong.

On the testimony there might be some question as to whether one of the appellants, George A. Budlong, is now prosecuting the appeal, but there clearly is no question raised as to the bona fide position of the other appellant, James H. Budlong.

The testimony shows that the two appellants are sons of one George R. Budlong, deceased, who was a cousin of Joseph A. Budlong. One of the distributees, both as a parental and as a maternal heir, is Mary E. Finnerty. The appellants contend that she is not entitled to participate in the distribution of the estate.

It would appear from the testimony that the appellants do not seriously question the fact that Mrs. Finnerty is the daughter of George R. Budlong. In any event, the evidence shows beyond any dispute that she bore that relationship to him. She proved that she was visited frequently by members of the Budlong family, more especially, perhaps, by the appellant George A. Budlong; that she was referred to as "sister" by the two appellants; that before her marriage she passed by the name of Budlong, and that the funeral of George R. Budlong was held from her residence and that she made all the necessary arrangements for that funeral. It also appeared in evidence that she attended to the burial of her stepmother, a Mrs. Gardiner. Further, during her childhood she lived for some time in the family of George R. Budlong, was treated and held out by him as a daughter, and was apparently so considered by her playmates at that time (see testimony of Mr. Brady and Mrs. Smith). Further, the post cards (Exhibits 9 and 10) and the written memoranda (Exhibit 1), all of which were shown to have been in the handwriting of Joseph A. Budlong, tend to show a family relationship and the fact that Mrs. Finnerty was the daughter of George R. Budlong. Finally, the appellants' own testimony as to statements made by George R. Budlong to them, if be-

lieved, proved beyond any doubt that Mrs. Finnerty was his daughter.

In the opinion of the court, the great weight of the testimony in the case shows this to be the fact without any dispute.

The difficult and decisive question in the case is as to whether or not George R. Budlong and the mother of Mrs. Finnerty were ever husband and wife, and whether or not Mrs. Finnerty was born in wedlock. If so, she is entitled to participate in the estate of Joseph A. Budlong as a distributee. If not, then the appeal should be sustained.

The question presented for the determination of the court on the evidence is one of great difficulty.

Mrs. Finnerty's claim rests chiefly on the family relationship and the circumstances hereinbefore referred to, the fact that the marriage records in the town of Warwick in this State show that the marriage of George R. Budlong to Louisa Place on October 16, 1864, is recorded as the second marriage of the said George R. Budlong (see Exhibit 7), and, finally, on certain statements which she claims her father, George R. Budlong, made to her regarding her birth. Her contention is that her father told her that she was born in the West in the first year of the Civil War and that her mother died when she was very young.

The two appellants are children of the marriage of George R. Budlong to Louisa Place. They claim in substance that Mrs. Finnerity is the illegitimate child of their father, George R. Budlong, and one Lucinda Miller, who was an inmate of the Town Farm in the town of Warwick for many years.

The evidence shows that George R. Budlong was at different times during his life an inmate of said Town Farm and that this farm was the old Budlong homestead. It appears that he was more or less crippled, partic-

ularly during the latter part of his life.

The appellants rest their case chiefly on the improbability of the story of her birth as told by Mrs. Finerty, on certain statements which they claim Mr. Budlong made to them at different times, but more especially during the latter part of his life while he was an inmate of the Town Farm, upon certain statements which the appellant George A. Budlong testified that Mrs. Finnerty made to him (see his evidence in rebuttal), and upon certain books introduced in evidence known as the registers of the Warwick Asylum. These books, which it was testified were kept in a desk in the office of the Town Farm in Warwick, and which appear to be kept chronologically and in the ordinary and regular course of business in conducting the farm, and the older of which from its condition and from the handwriting therein appears to be a book running back for many years, were admitted in evidence by the court. It appeared to the court that these books could be considered under the broad general rule laid down in the case of Ribas vs. Revere Rubber Company, 37 R. I. 189, although, possibly, the proof as to the records in this case was not as clear and complete as it was in the case referred to.

In a case such as this the court understands that the broad, general rule of law is that, where possible, the court will presume that a child is legitimate and that the burden of overthrowing this is upon the person attacking the legitimacy. Such presumption, of course, is merely a presumption and is capable of being overthrown by competent proof.

In the case at bar the appellants attack this presumption by evidence which seems to the court to be of considerable weight. In the first place, they present testimony of statements made by George R. Budlong

to them, in substance, that he was married only once, namely, to Louisa Place, and that on one occasion· he pointed out to one of them the woman named Lucinda Miller as the mother of Mrs. Finnerty.

As against this, Mrs. Finnerty offers testimony of statements she says her father, George R. Budlong, made to her relating to his marriage and her birth in the West. Possibly these statements which the respective parties claim their father made to them at different times tend to neutralize and offset each other. In addition to these statements, however, the appellants present the proof contained in the register of the Warwick Asylum and, in particular, the older of the two books introduced. It would appear from this book that George R. Budlong was first admitted to the Warwick Asylum in March 1857, he then being about thirty years of age. At that time, Lucinda Miller or Millerd, as apparently she was sometimes called, was also an inmate of the Asylum and about seventeen years of age, she having been born at the Asylum in 1840. From the records, George R. Budlong left the Asylum about March, 1858, but returned again in November, 1858. From then on until April, 1861, it would appear that both George R. Budlong and Lucinda Miller were inmates of the Warwick Asylum. From the records they both left the Asylum in April, 1861. July 1, 1861, Lucinda Miller returned and July 12, 1861, George R. Budlong returned to the Asylum. July 15th of the same year he left, and November 5th of that year he returned and, apparently, on April 22, 1862, he left the Asylum and did not again return until about 1876. The register of the Asylum shows that on September 22, 1861, a child was born to Lucinda Miller, which was named Mary E. Miller. It perhaps should be noted in passing that Mrs. Finnerty's name is Mary E. Finnerty. Lucinda

Miller remained at the Warwick farm for many years, leaving occasionally but usually returning in a short time. Another child was born to her March 6, 1865, according to the records.

After leaving the Asylum, April 22, 1862, George R. Budlong can next be definitely located at the time of his marriage to Louisa Place on October 16, 1864, in Warwick.

It should be noted that the child Mary E. Miller was born September 22, 1861, which would agree with Mrs. Finnerty's statement that she always understood she was born the first year of the Civil War. It is the appellants' contentions that this child Mary E. Miller is Mary E.· Finnerty. Another coincidence, as it would appear from the Warwick Asylum records, is that the child Mary E. Miller left the Asylum December 22, 1864. This was about two months after Mr. Budlong's marriage to Louisa Place, and the testimony in the case shows that Mrs. Finnerty's first recollection relates to living at East Greenwich with her father George R. Budlong and her stepmother, and it may well be argued that the child was taken from the Asylum by Mr. Budlong two months after his marriage and brought up in his home.

The testimony of George A. Budlong as given in rebuttal, relating to statements he claims Mrs. Finnerty made to him, if it is to be believed, has considerable probative force. The appellant George A. Budlong impressed the court rather favorably, although undoubtedly he was somewhat confused as to certain dates.

Perhaps the strongest point in Mrs. Finnerty's claim that she is a legitimate daughter of George R. Budlong by a marriage prior to that with Louisa Place, is the marriage record in the Town of Warwick. In the first place, however, even if George R. Budlong was married once before he married Louisa Place, there is no very definite testimony to show that

Mrs. Finnerty was a child of that marriage. There is also nothing to show that he was ever married to the woman Lucinda Miller, or that he ever lived with her as man and wife. It does not seem to the court that it would be warranted in assuming any such marriage because of the fact that, by so doing, the court would further have to assume that Mr. Budlong knowingly was guilty of bigamy in marrying Louisa Place, it being clear from the testimony that Lucinda Miller lived many years after Mr. Budlong's marriage to the said Louisa.

In regard to the marriage to Louisa Place being recorded as Mr. Budlong's second marriage, it may perhaps be argued that Mr. Budlong, having in mind that he had at this time a child and desiring to bring up that child in his home and possibly protect the child in the future, and for the further purpose of explaining the presence of the child, may have informed his future wife and the marriage authorities in Warwick that the marriage he was then contemplating was his second.

The court finds considerable difficulty in accepting the testimony of Mrs. Finnerty as to her birth as reasonable and probable, although she testified it is what her father, George R. Budlong, told her. If the records of the Warwick Asylum are worthy of any credibility, then apparently the only opportunity Mr. Budlong had to go to the West to be married, to have a child born of this union, and to return East again after the death of his alleged wife, was between the dates of April 22, 1862, and October 16, 1864, a period of about two and a half years. This, of course, is possible but does not seem probable. Moreover, if Mrs. Finnerty was the child of any marriage between these dates, she was not born during the first year of the Civil War. Also, it should be kept in mind that at this time persons did not travel as freely

and as easily as they do now, that the Civil War was in progress, and that the story as told by Mrs. Finnerty would necessitate George R. Budlong leaving Warwick, going to the West to some mine, and later returning to the East with an infant child, all of which seems to the court somewhat unlikely. Mrs. Finnerty, in her testimony, does not know where her father went in the West, who her mother was, where she lived or died, or where she herself was born.

The court was somewhat struck by the lack of interest which, apparently, Mrs. Finnerty showed in ascertaining the name of her mother, if she believed the story as told her by her father. It did not seem quite natural. While the court realizes that she left her stepmother's home when comparatively young and soon after she learned that she was not her stepmother's daughter, and while she herself was married when about eighteen to Mr. Bennett, nevertheless, it would appear that she had ample opportunity to inquire from her father the details regarding her mother's life and her own birth and early years. She evidently never took the trouble to find out about these things.

After considering the reasonableness of the testimony presented on behalf of Mrs. Finnerty and on behalf of the appellants, and the probabilities of the situation as presented by the evidence and the records as they appear in the register of the Warwick Asylum, and after examining the exhibits in the case and weighing all the testimony carefully, the court has come to the conclusion that it preponderates in favor of the appellants, and that they have succeeded in overcoming any presumption of legitimacy which may exist in such a case as the one at bar. The court is of the opinion that for any such presumption to have much weight or effect the testimony should at least show that the man and

woman in question lived together as husband and wife and held themselves out to the community as such, or in any event that the court should be able to point out some more or less definite person as the mother of the child whose legitimacy is in dispute. In this case, according to the testimony introduced on behalf of Mrs. Finnerty, the name of the woman she claims to have been her mother can not be ascertained, nor the time or place of the marriage with Mr. Budlong, nor the place of her death, nor the date or place of Mrs. Finnerty's birth. In the judgment of the court, where such a situation appears from the evidence, the presumption of legitimacy can not be carried very far.

On all the testimony in the case, therefore, the court finds that the appellants have sustained their contention and that Mrs. Finnerty is not entitled to participate in the distribution of the estate of Joseph A. Budlong for the reasons hereinbefore set out.

The appeal is sustained.

For Appellants: Max Levy.

For Appellees: Edward A. Stockwell and Quinn, Kernan & Quinn.